Aaron T. Rouse, Plaintiff-Appellant-Petitioner,

Network Health Plan, Plaintiff,

v.

Theda Clark Medical Center, Inc.,
Christopher P. Hugo, M.D., Mark Westfall, D.O.,
OHIC Insurance Company, Thomas L. Tolly,
M.D., Jeffrey S. Burkett, M.D. and Injured
Patients & Families Compensation Fund,
Defendants,

University of Wisconsin Hospital & Clinics
Authority, Patrick Keller, M.D.,
Scott Dull, M.D., Everett Hughes, M.D.,
Aaron Johnson, M.D., Physicians Insurance
Company of Wisconsin, Inc.,
Defendants-Respondents.

Supreme Court

*No. 2005AP2743. Oral argument April 25, 2007.
—Decided July 6, 2007.*

2007 WI 87

(Also reported in 735 N.W.2d 30.)

For the plaintiff-appellant-petitioner there were briefs by *J. Michael End, Jerome A. Hierseman, Lora A. Kaelber,* and *End, Hierseman & Crain, LLC,* Milwaukee, and oral argument by *J. Michael End.*

For the defendants-respondents there were briefs by *Michael B. Van Sicklen, Matthew D. Lee,* and *Foley & Lardner LLP,* Milwaukee, and oral argument by *Michael B. Van Sicklen.*

An amicus curiae brief was filed by *Linda V. Meagher* and *Habush, Habush & Rottier, S.C.,* Waukesha, and *Rhonda L. Lanford* and *Habush, Habush & Rottier, S.C.,* Madison, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Charles D. Hoornstra,* Madison, on behalf of the Board of Regents of the University of Wisconsin System.

An amicus curiae brief was filed on behalf of the Wisconsin Department of Justice by *Bruce A. Olsen,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. JON P. WILCOX, J. This is a review of an unpublished court of appeals decision, *Rouse v. Theda Clark Medical Center, Inc.,* No. 2005AP2743, unpub-

lished slip opinion (Wis. Ct. App. October 4, 2006). The court of appeals affirmed a judgment of the Calumet County Circuit Court, Donald A. Poppy, Judge. Judge Poppy dismissed with prejudice Aaron T. Rouse's (Rouse) action against the University of Wisconsin Hospital & Clinics Authority; Patrick Keller, M.D.; Scott Dull, M.D.; Everett Hughes, M.D.; Aaron Johnson, M.D.; and Physicians Insurance Company of Wisconsin, Inc. (collectively UWHCA)[1] because Rouse failed to provide notice pursuant to Wis. Stat. § 893.80.[2]

---

[1] Patrick Keller, M.D.; Scott Dull, M.D.; Everett Hughes, M.D.; and Aaron Johnson, M.D. were medical employees of the University of Wisconsin Hospital & Clinics Authority at the time relevant to this case.

[2] Wisconsin Stat. § 893.80 provides the following in pertinent part:

> **Claims against governmental bodies or officers, agents or employees; notice of injury, limitation of damages and suits.** (1) Except as provided in subs. (1g), (1m), (1p) and (8), no action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employee of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:
>
> (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee . . . .
>
> . . . .

¶ 2. This case presents one issue: Is the UWHCA, as a statutorily-created, public body corporate and politic, a "political corporation" for the purposes of § 893.80? We hold that the UWHCA is a "political corporation" because of the power and structure provided by the legislature in Wis. Stat. ch. 233. The circuit court properly dismissed Rouse's action against the UWHCA with prejudice.[3] Accordingly, we affirm the court of appeals.

(1m) With regard to a claim to recover damages for medical malpractice, the time period under sub. (1) (a) shall be 180 days after discovery of the injury or the date on which, in the exercise of reasonable diligence, the injury should have been discovered, rather than 120 days after the happening of the event giving rise to the claim.

All subsequent references to the Wisconsin Statutes are to the 2003–04 version, unless otherwise stated.

[3] Our holding that the UWHCA falls within the scope of § 893.80 means the circuit court properly dismissed Rouse's action with prejudice. Pursuant to *Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938), which established that only dispositive issues need to be addressed on appeal, we do not address the other issue Rouse raised in his petition for review, which stated the following:

In light of *Ferdon v. Wisconsin Patients Compensation Fund,* 2005 WI 125, 284 Wis. 2d 573, 701 N.W.2d 440, if the University of Wisconsin Hospitals and Clinics Authority is entitled to governmental immunity, is the $50,000 damage cap in Wis. Stat. § 893.80(3) unconstitutional as applied to the UWHCA—a financially independent entity?

The dismissal of the action against the UWHCA results in a lack of "a factual basis on which a judicial declaration may be made to guide future conduct." *See State ex. rel. La Crosse Tribune v. Cir. Ct. for La Crosse County,* 115 Wis. 2d 220, 228–29, 340 N.W.2d 460 (1983).

The dissent would address Rouse's other issue, and then some. Not only does the dissent delve into questions not even raised by the parties, it attempts to rewrite this very opinion. *See*

¶ 3. On May 19, 2001, Rouse was involved in a motor vehicle accident. The vehicle he was driving reportedly hit a tree, rolled repeatedly, and burst into flames. Rouse suffered multiple fractures and burns.

¶ 4. From the scene of the accident, Rouse was transported to Theda Clark Medical Center in Neenah, Wisconsin. After receiving some treatment, MedFlight transported Rouse to the University of Wisconsin Hospital and Clinics (UW Hospital) in Madison, Wisconsin. At UW Hospital, Rouse received further treatment.

¶ 5. Over three years after receiving treatment for his injuries, Rouse commenced a medical malpractice action against the UWHCA; Theda Clark Medical Center, Inc.; Christopher P. Hugo, M.D.; Mark Westfall, D.O.; OHIC Insurance Company; Thomas L. Tolly, M.D.; Jeffrey S. Burkett, M.D.; and Injured Patients & Families Compensation Fund.

¶ 6. The UWHCA filed a consolidated motion to dismiss. The UWHCA asserted that Rouse failed to serve the notice of claim required by Wis. Stat. § 893.80. In support of its motion, the UWHCA filed an affidavit from Rosemary Waitkus, Risk Management Analyst at the UWHCA. The affidavit stated that in her position she maintained the files for all notices of claims received by the UWHCA. The affidavit also stated that in reviewing the files she did not locate a notice of claim from Rouse.

¶ 7. In responding to the motion to dismiss, Rouse argued that § 893.80 did not apply to his case because

---

dissent, ¶¶ 45 and 8544. Despite the dissent's characterizations of this opinion, it is the dissent. We hold that the UWHCA is a "political corporation" because of the power and structure provided by the legislature in Wis. Stat. ch. 233. Therefore, Wis. Stat. § 893.80 applies.

the UWHCA does not fall within the scope of § 893.80. To support his position, Rouse also filed an affidavit and exhibits. The exhibits were the paramedics' report and the medical records from Theda Clark Medical Center and UW Hospital.

¶ 8. Because materials outside of the pleadings were submitted and considered by the court, the circuit court treated the UWHCA's motion to dismiss as a motion for summary judgment. In a written decision, it concluded that the UWHCA was a "political corporation" as set forth in § 893.80. The circuit court believed that the UWHCA's purpose is governmental in nature. In addition, the circuit court found it to be significant that the institution that preceded the UWHCA, the University of Wisconsin Hospital and Clinics, was protected by sovereign immunity. The circuit court stated that the legislature was aware of the predecessor's immunity and if the legislature intended for the immunity not to extend to the UWHCA it could have easily eliminated the immunity in the new legislation that created the UWHCA. The circuit court dismissed the action on its merits with prejudice. Costs of $950.73 were assessed against Rouse.

¶ 9. Rouse appealed the circuit court's decision to the court of appeals. The court of appeals filed a certification with this court. The certification noted that the legislature's treatment of the UWHCA led to conflicting views as to its nature. The court of appeals described the UWHCA as a body that possesses some qualities of a public entity, but that the legislature created the UWHCA as a way to make the University of Wisconsin Hospital and Clinics more competitive with private hospitals. In addition, the court of appeals noted that in *Takle v. University of Wisconsin Hospital & Clinics Authority,* 402 F.3d 768 (7th Cir. 2005), the

367

United States Court of Appeals for the Seventh Circuit concluded that the UWHCA did not have sovereign immunity. This court denied the certification.

¶ 10. Following this court's denial of the certification, the court of appeals affirmed the circuit court's order of dismissal. The court of appeals noted its concerns with the application of § 893.80 to the UWHCA, but found itself bound by the judicial notice this court took in *Lewis v. Physicians Insurance Co. of Wisconsin,* 2001 WI 60, ¶ 25 n.18, 243 Wis. 2d 648, 627 N.W.2d 484, that the UWHCA was one of only three government-owned hospitals in Wisconsin.

¶ 11. Rouse filed a petition for review with this court, which was granted.

## II

¶ 12. We review a grant of summary judgment independently, while applying the same methodology as the circuit court. *AKG Real Estate, LLC v. Kosterman,* 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 13. In this case, there is no genuine issue of material fact. We must interpret § 893.80 to determine whether the UWHCA is entitled to judgment as a matter of law. Statutory interpretation presents an issue of law that we review de novo. *Megal Dev. Corp. v. Shadof,* 2005 WI 151, ¶ 8, 286 Wis. 2d 105, 705 N.W.2d 645.

· ¶ 14. Interpreting § 893.80 in this context presents an issue of first impression. Courts have ad-

368

dressed the predecessor of the notice of claim requirement in § 893.80. *Townsend v. Wisconsin Desert Horse Ass'n,* 42 Wis. 2d 414, 423, 167 N.W.2d 425 (1969)(concluding the notice of claim requirement did not apply to the state or its agencies); *Majerus v. Milwaukee County,* 39 Wis. 2d 311, 316, 159 N.W.2d 86 (1968) (stating that failure to comply with the notice of claim requirement was not a jurisdictional defect, if it was a defect at all). They have also addressed the term "political corporation," but in the context of obtaining personal jurisdiction. *Hagen v. City of Milwaukee Employee's Ret. Sys. Annuity & Pension Bd.,* 2003 WI 56, ¶ 15, 262 Wis. 2d 113, 663 N.W.2d 268 (citing Milwaukee City Charter § 36–09–6 for the proposition that the City of Milwaukee Employees' Retirement System/Annuity and Pension Board was a political corporation); *Watkins v. Milwaukee County Civil Serv. Comm'n,* 88 Wis. 2d 411, 416–18, 276 N.W.2d 775 (1979)(interpreting Wis. Stat. § 801.11(4)(a), which deals with obtaining personal jurisdiction over a defendant that is a political corporation or body politic). Courts have also addressed the status of the UWHCA as an entity. *Takle,* 402 F.3d at 772–73 (concluding that the UWHCA did not have sovereign immunity); *Lewis,* 243 Wis. 2d 648, ¶ 25 n.18 (taking judicial notice that the UWHCA was a government-owned facility). However, a court has not previously interpreted the term "political corporation" in the context of § 893.80 and determined whether the UWHCA falls within its scope.

■

¶ 15. Our goal in interpreting statutory provisions is to give effect to the intent of the legislature, which we assume is expressed in the text of the statute. *State ex rel. Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. To this end, absent ambiguity in a statute, we do not resort to

extrinsic aids of interpretation and instead apply the plain meaning of the words of a statute in light of its textually manifest scope, context, and purpose. *Id.,* ¶¶ 45–46. A statute is ambiguous if it is susceptible to more than one reasonable understanding. *Id.,* ¶ 47. If a statute is ambiguous, we may examine extrinsic sources in order to guide our interpretation. *Id.,* ¶ 50.

¶ 16. Wisconsin Stat. § 893.80(1)(a) provides the following:

> (1) Except as provided in subs. (1g), (1m), (1p) and (8), no action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employee of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:
>
> (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee . . . .

Wis. Stat. § 893.80(1)(a) creates a notice of claim requirement for a plaintiff suing a "political corporation."

¶ 17. Wisconsin Stat. § 893.80(1m) relates specifically to medical malpractice claims, stating the following:

With regard to a claim to recover damages for medical malpractice, the time period under sub. (1) (a) shall be 180 days after discovery of the injury or the date on which, in the exercise of reasonable diligence, the injury should have been discovered, rather than 120 days after the happening of the event giving rise to the claim.

Read together, §§ 893.80(1)(a) and (1m) require that a person bringing a medical malpractice claim against a "political corporation" must serve it with "written notice of the claim," § 893.80(1)(a), within "180 days after discovery of the injury or the date which, in the exercise of reasonable diligence, the injury should have been discovered." Wis. Stat. § 893.80(1m).

¶ 18. An entity that falls within the scope of § 893.80(1)(a) must affirmatively plead that the plaintiff failed to comply with it. *Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 24, 235 Wis. 2d 610, 612 N.W.2d 59. If the plaintiff failed to provide written notice, he or she may still be able to satisfy § 893.80(1)(a). Wisconsin Stat. § 893.80(1)(a) explicitly provides that the notice requirement may be satisfied by a plaintiff that gave the entity actual notice of the claim, as long as the actual notice did not cause a prejudicial impact on the entity. Given that § 893.80(1m) modifies only the timing for the notice, the actual notice aspect of § 893.80(1)(a) would also apply in medical malpractice cases.

¶ 19. The notice of claim statute provides a condition precedent that limits " ' "the time within which a certain prescribed act, necessary to the enforcement of [the plaintiff's] cause of action, shall be done." ' " *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 295, 588 N.W.2d

371

19 (1999)(quoting *Ocampo v. Racine,* 28 Wis. 2d 506, 509, 137 N.W.2d 477 (1965) and *Troschansky v. Milwaukee Elec. Ry. & Light Co.,* 110 Wis 570, 571, 86 N.W. 156 (1910)). A plaintiff's failure to satisfy the condition precedent provided by § 893.80 results in a loss of the right to proceed with the action against the governmental entity. *Id.* Requiring such notice enables governmental entities to "investigate a claim against an employee, to avoid needless litigation, and to settle all reasonable claims." *Riccitelli v. Broekhuizen,* 227 Wis. 2d 100, 120, 595 N.W.2d 392 (1999); *see also Thorp,* 235 Wis. 2d 610, ¶ 23.

¶ 20. Wisconsin Stat. § 893.80 is entitled "Claims against governmental bodies or officers, agents or employees; notice of injury; limitation of damages and suits." Wisconsin Stat. § 893.80 is part of Subchapter VIII of Wis. Stat. ch. 893, which is entitled, "Claims against governmental bodies, officers and employees." Titles used in the statutes are not considered part of the statutes. Wis. Stat. § 990.001(6). They may, however, be persuasive evidence when interpreting a statute. *Kontowicz v. Am. Standard Ins. Co. of Wis.,* 2006 WI 48, ¶ 35, 290 Wis. 2d 302, 714 N.W.2d 105.

¶ 21. The legislature has not provided a definition of "political corporation." When giving a statute its plain and ordinary meaning, courts refer to dictionaries to define those terms not defined by the legislature. *State v. Wittrock,* 119 Wis. 2d 664, 670, 350 N.W.2d 647 (1984). Wisconsin Stat. § 990.01(1) provides that "[a]ll words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

¶ 22. The term "political corporation" is synonymous with the term "public corporation." *Black's Law Dictionary* 344 (7th ed. 1999). A "public corporation" is "[a] corporation that is created by the state as an agency in the administration of civil government." *Id.* An "agency" is "[a] governmental body with the authority to implement and administer particular legislation." *Id.* at 63. Stated another way, a "political corporation" is an entity created by the legislature that is authorized to implement enactments of the legislature.

¶ 23. Determining whether the UWHCA constitutes a "political corporation" requires an assessment of the nature of the entity. Assessing the nature of an entity requires a consideration of the power and structure of it, as conferred by the legislature. *State ex rel. Warren v. Nusbaum,* 59 Wis. 2d 391, 424, 208 N.W.2d 780 (1973). Wisconsin Stat. ch. 233 enumerates the power and the structure of the UWHCA.

¶ 24. After providing definitions for the chapter, the legislature explicitly states its intent to create "a public body corporate and politic to be known as the 'University of Wisconsin Hospitals and Clinics Authority.'" Wis. Stat. § 233.02(1). Though relevant to our inquiry, we look beyond such a "legislative denomination" to the power and structure of the entity. *Nusbaum,* 59 Wis. 2d at 424.

¶ 25. In creating the UWHCA, the legislature decided that the board of directors would be either state employees or appointed by government officials. Wis. Stat. § 233.02(1). Specifically, the board is composed as follows:

(a) Three members nominated by the governor, and with the advice and consent of the senate appointed, for 3-year terms.

(am) Each cochairperson of the joint committee on finance or a member of the committee designated by that cochairperson.

(b) Three members of the board of regents appointed by the president of the board of regents.

(c) The chancellor of the University of Wisconsin-Madison or his or her designee.

(d) The dean of the University of Wisconsin-Madison Medical School.

(e) A chairperson of a department at the University of Wisconsin-Madison Medical School, appointed by the chancellor of the University of Wisconsin-Madison.

(f) A faculty member of a University of Wisconsin-Madison health professions school, other than the University of Wisconsin-Madison Medical School, appointed by the chancellor of the University of Wisconsin-Madison.

(g) The secretary of administration or his or her designee.

(h) Two nonvoting members appointed by the governor, one of whom shall be an employee or a representative of a labor organization recognized or certified to represent employees in one of the collective bargaining units specified in s. 111.05 (5) (a) and one of whom shall be an employee or a representative of a labor organization recognized or certified to represent employees in one of the collective bargaining units specified in s. 111.825 (1m).

*Id.* The directors are not compensated, but do get reimbursed for actual costs they incur in performing their

duties. Wis. Stat. § 233.02(3). Directors are also protected from civil liability that may arise from the performance of their duties, except if it constitutes willful misconduct. Wis. Stat. § 233.02(4).

¶ 26. The legislature granted the UWHCA "all the powers necessary or convenient to carry out the purposes and provisions of [ch. 233]." Wis. Stat. § 233.03. The UWHCA is specifically authorized to take actions such as adopting bylaws, policies, and procedures for "the regulation of its affairs and the conduct of its business," Wis. Stat. § 233.03(1); suing and being sued, Wis. Stat. § 233.03(2); accepting gifts and grants, "but not including research grants in which the grant investigator is an employee of the board of regents," *id.;* procuring insurance on debt obligations, Wis. Stat. § 233.03(5); engaging in collective bargaining with collective bargaining units recognized or authorized by statute, Wis. Stat. § 233.03(7); participating in corporations or partnerships that provide health-related services, if various state entities and officials are presented with the proper access to documents, Wis. Stat. § 233.03(9); issuing bonds in accordance with state statute, Wis. Stat. § 233.03(11); and constructing and improving facilities on state-owned land, provided statutory conditions are satisfied, Wis. Stat. § 233.03(13).

¶ 27. The legislature also imposed duties on the UWHCA. Wis. Stat. § 233.04. Wisconsin Stat. ch. 233 details leases and affiliation agreements the UWHCA must enter with the University of Wisconsin System board of regents. Wis. Stat. §§ 233.04(7) and (7m). While the leases and agreements are in place with the board of regents, the UWHCA must

> maintain, control and supervise the use of the University of Wisconsin Hospitals and Clinics, for the purposes of:

375

1. Delivering comprehensive, high-quality health care to patients using the hospitals and to those seeking care from its programs, including a commitment to provide such care for the medically indigent.

2. Providing an environment suitable for instructing medical and other health professions students, physicians, nurses and members of other health-related disciplines.

3. Sponsoring and supporting research in the delivery of health care to further the welfare of the patients treated and applying the advances in health knowledge to alleviate human suffering, promote health and prevent disease.

4. Assisting health programs and personnel throughout the state and region in the delivery of health care.

Wis. Stat. § 233.04(3b). It must also enter into a contractual services agreement with the University of Wisconsin Hospital and Clinics Board for employees. Wis. Stat. § 233.04(4). In the event that the joint committee on finance does not approve an extension or renewal of a lease or agreement, the UWHCA facilities will transfer to the board of regents. Wis. Stat. §§ 233.04(7g)(b) and (7p)(b).

¶ 28. The UWHCA duties also include updating the state on various matters. It must annually submit a report to the governor, each house of the legislature, president of the board of regents, and the secretary of administration. Wis. Stat. § 233.04(1). The report must include an audited financial statement and information on patient care, education, research, community services activities, and accomplishments of the UWHCA. *Id.* In addition to the annual report, the UWHCA must provide on a monthly basis the secretary of administration with

financial and statistical information that he or she requires. Wis. Stat. § 233.04(9).

¶ 29. Wisconsin Stat. ch. 233 also addresses issues related to bonds, including the issuance of bonds, Wis. Stat. § 233.20, the security of bonds, Wis. Stat. § 233.21, the refunding of bonds, Wis. Stat. § 233.26, and the amount of outstanding bonds, Wis. Stat. § 233.27. The UWHCA must include a statement on the face of all bonds that "[t]he state is not liable on bonds and the bonds are not a debt of the state." Wis. Stat. § 233.22. The state also

> pledges to and agrees with the bondholders, and persons that enter into contracts with the authority under this chapter, that the state will not limit or alter the rights vested in the authority by this chapter before the authority has fully met and discharged the bonds, and any interest due on the bonds, and has fully performed its contracts, unless adequate provision is made by law for the protection of the bondholders or those entering into contracts with the authority.

Wis. Stat. § 233.23.

¶ 30. Wisconsin Stat. ch. 233 also establishes many other duties, which address issues ranging from how the UWHCA maintains records, Wis. Stat. § 233.12, to requiring it to operate a poison control center, Wis. Stat. § 233.04(10).

¶ 31. Given the power and structure of the UWHCA, we conclude that it is a "political corporation." The legislature created the UWHCA. It has a statutory purpose, which includes providing high-quality care to the medically indigent, maintaining an environment for instructing future health care providers, leading efforts to reduce human suffering and promoting of health,

and assisting with the delivery of health care around the state. The voting members of its board of directors are either public officials or appointed by public officials. It has a duty to engage in collective bargaining. It must enter into agreements and leases with the state. It must update the state on a consistent basis. The state is ensured access to the UWHCA's financial statements. In the event there is a failure to extend or renew an agreement or lease, facilities transfer to the board of regents. The power granted by the legislature, and the structure it has imposed on the UWHCA, indicate that the legislature intended the UWHCA to be a political corporation. Therefore, it falls within the notice requirement of § 893.80.

¶ 32. Some features of the UWHCA are shared with private entities. For instance, it does not receive general purpose revenue from the state. It can sue and be sued. It can buy and sell real estate. Nevertheless, the legislature empowered it to act within a framework that is closely reviewed by the state. The power and structure of the UWHCA based upon Wis. Stat. ch. 233 leads us to conclude that the legislature intended a plaintiff to serve it with a notice of claim.

¶ 33. Because the UWHCA falls within the scope of § 893.80, the circuit court properly dismissed Rouse's action against the UWHCA with prejudice. Wisconsin Stat. § 893.80 requires that a person bringing a medical malpractice claim against an entity that falls within the scope of the statute serve it with "written notice of the claim," § 893.80(1)(a), within "180 days after discovery of the injury or the date on which, in the exercise of reasonable diligence, the injury should have been discovered." Wis. Stat. § 893.80(1m). Rouse did not provide the UWHCA such notice. The UWHCA affirmatively pled

that Rouse failed to provide it with the proper notice. Rouse did not provide the UWHCA with actual notice. Rouse could not maintain his action against the UWHCA.

¶ 34. Rouse argues that § 893.80 should not have even applied to his case because of the exclusivity of Wis. Stat. ch. 655 when a person brings a medical malpractice claim.

¶ 35. Wisconsin Stat. ch. 655 does provide the exclusive procedure for a person to pursue a malpractice claim against a health care provider. *State ex. rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 499, 261 N.W.2d 434 (1978). Three sections in particular indicate the exclusivity of Wis. Stat. ch. 655. Wisconsin Stat. § 655.006(1)(a) provides that "every patient, every patient's representative and every health care provider shall be conclusively presumed to have accepted to be bound by this chapter." Wisconsin Stat. § 655.005 provides that "[a]ny person listed in s. 655.007 having a claim or a derivative claim against a health care provider or an employee . . . for damages for bodily injury or death . . . is subject to this chapter. Wisconsin Stat. 655.007 provides that any patient or the patient's representative having a claim or any spouse, parent, minor sibling or child . . . having a derivative claim . . . on account of malpractice is subject to this chapter." *See also Maurin v. Hall,* 2004 WI 100, 50, 274 Wis. 2d 28, 682 N.W.2d 866, *overruled in part by Bartholomew v. Wis. Patients Comp. Fund and Compcare Health Servs. Ins. Corp.,* 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216.

■

¶ 36. Wisconsin Stat. ch. 655 does not, however, provide a comprehensive set of procedural rules for maintaining a medical malpractice claim. *Storm v. Legion Ins. Co.,* 2003 WI 120, ¶ 34, 265 Wis. 2d 169,

665 N.W.2d 353. Wis. Stat. Ch. 655 does not exist in a procedural vacuum. Other procedures governing civil litigation apply to medical malpractice claims, unless they conflict with chapter 655. *Id.* For instance, chapter 655 does not contain a statute of limitations provision, but the three-year statute of limitations provided in § 893.55(1)(a) has been applied. *See Ocasio v. Froedtert Mem'l Lutheran Hosp.,* 2001 WI App 264, 248 Wis. 2d 932, 637 N.W.2d 459. The five-year statute of repose in § 893.55(1)(b) also has been applied. *See Aicher v. Wis. Patients Comp. Fund,* 2000 WI 98, 237 Wis. 2d 99, 613 N.W.2d 849; *See also Halverson v. Tydrich,* 156 Wis. 2d 202, 456 N.W.2d 852 (Ct. App. 1990). The two-year statute of limitations for intentional torts pursuant to § 893.57 has also been applied. *See Deborah S.S. v. Yogesh N.G.,* 175 Wis. 2d 436, 499 N.W.2d 272 (Ct. App. 1993). Courts also have applied statutes governing service of summons, *Young v. Aurora Medical Center of Washington County, Inc.,* 2004 WI App 71, 272 Wis. 2d 300, 679 N.W.2d 549, and discretionary changes of venue, *Hoffman v. Memorial Hosp. of Iowa County,* 196 Wis. 2d 505, 538 N.W.2d 627 (Ct. App. 1995).

¶ 37. Wisconsin Stat. § 893.80 provides a set of rules specifically for claims against governmental bodies and officers, agents, or employees, which broadly applies to all causes of action unless a further, more specific rule says otherwise. *See DNR v. City of Waukesha,* 184 Wis. 2d 178, 183, 515 N.W.2d 888 (1994) (concluding that § 893.80 applies to "all actions") *overruled in part by State ex rel. Auchinleck v. Town of LaGrange,* 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996) (stating that the all actions language of *DNR v. City of Waukesha* does not extend to open records and open meetings actions, where more specific provisions take

precedence). This is in accordance with the canon of statutory construction providing that where a general statute and a specific statute apply to the same subject, the specific statute controls. *State ex rel. Hensley v. Endicott,* 2001 WI 105, ¶ 19, 245 Wis. 2d 607, 629 N.W.2d 686.

¶ 38. Wisconsin Stat. § 893.80(1m) requires that, "[w]ith regard to a claim to recover damages for medical malpractice" against a political corporation, governmental subdivision or agency, within 180 days of discovery of the injury, the claimant must serve that governmental body with written notice pursuant to § 893.80(1)(a). This is a specific statute of limitations which applies in medical malpractice cases against enumerated types of governmental bodies, such as political corporations. The language of § 893.80(1m) explicitly anticipates the application of § 893.80 to medical malpractice claims against governmental bodies.

■

¶ 39. Wisconsin Stat. § 893.80(1m) applies to medical malpractice claims against governmental bodies that fall within the scope of § 893.80, such as the UWHCA. Chapter 655 does not contain any statute of limitations provision that conflicts with § 893.80. The generally exclusive nature of Chapter 655 does not prevent the application of § 893.80 in this case.

### III

¶ 40. This case presented one issue: Is the UWHCA, as a statutorily-created, public body corporate and politic, a "political corporation" for the purposes of § 893.80? We hold that the UWHCA is a "political corporation" because of the power and structure provided by the legislature in Wis. Stat. ch. 233. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 41. Justices ANN WALSH BRADLEY and PATIENCE DRAKE ROGGENSACK took no part.

¶ 42. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The parties initially briefed only the issue of the application of § 893.80 (2003–04)[1] to the UWHCA. But this issue is not the only issue in the instant case. After oral argument the court asked the parties to provide supplemental briefs discussing the application of Chapter 655 to the UWHCA and the relationship between § 893.80 and Chapter 655. Specifically, the court asked the parties to address the following question:

> Taking into consideration Wis. Stat. ch. 655 and the provisions of Wis. Stat. § 893.80, as well as any other relevant matters, including *Rineck v. Johnson,* 155 Wis. 2d 659, 456 N.W.2d 336 (1990) and *Jelinek v. St. Paul Fire and Casualty Insurance Company,* 182 Wis. 2d 1, 512 N.W.2d 764 (1994), is Wis. Stat. ch. 655 the exclusive procedure for pursuing malpractice claims against chapter 655 health care providers and their employees, rendering § 893.80 inapplicable?

¶ 43. The plaintiffs primarily argued in their supplemental brief that only Chapter 655 applies to the UWHCA. In contrast, the defendants primarily argued that only Wis. Stat. § 893.80 applies to the UWHCA. According to the majority opinion, both § 893.80 and Chapter 655 apply to the UWHCA. The majority opinion tersely concludes that because "Chapter 655 does not contain any statute of limitations provision that conflicts with § 893.80," the 180–day notice of claim

---

[1] All references to the Wisconsin statutes are to the 2003–04 version unless otherwise noted.

provision of § 893.80 applies to the UWHCA and its employees. Majority op., ¶ 39.

¶ 44. Properly determining whether the 180–day notice of claim was required under Wis. Stat. § 893.80 in the instant case requires the court to address three questions:

> I. Is the UWHCA (described in the statutes as a "public body corporate and politic") a "political corporation" under Wis. Stat. § 893.80 so that a medical malpractice claimant must comply with the 180–day notice of claim requirement?

> II. Are the UWHCA and its employees[2] "health care providers" under Wis. Stat. Chapter 655, which governs medical malpractice suits brought against health care providers? and

> III. Can Wis. Stat. § 893.80 and Chapter 655 be harmonized so that both can apply to medical malpractice actions brought against the UWHCA?

¶ 45. The majority opinion answers "Yes" to the first two questions and brushes aside the importance of answering the third question, which the court posed to the parties. As a result, the majority opinion dismisses the action against the UWHCA and its employees on the ground that the plaintiff did not comply with the 180–day notice of claim requirement in Wis. Stat. § 893.80.

¶ 46. For the reasons set forth, I conclude as follows:

> I. The UWHCA is not a "political corporation" under Wis. Stat. § 893.80 and claimants need not follow the 180–day notice of claim requirement. Rather, the UWHCA is a hybrid organization that the legislature did not intend to be covered by § 893.80.

---

[2] By "employees," I refer to those employees who are health care providers under Chapter 655.

II. The UWHCA is not an exempt "governmental agency" under Wis. Stat. § 655.003(2); it is a non-exempt "health care provider" under Chapter 655. Even if the UWHCA itself were exempt from Chapter 655, its employees still are "health care providers" governed by Chapter 655.

III. Wisconsin Stat. § 893.80 and Chapter 655 cannot readily be harmonized with regard to the commencement of a medical malpractice action. It is unclear whether the § 893.80 notice of claim provision can be harmonized with the Chapter 655 mediation provisions, whether the § 893.80 and Chapter 655 statutes of limitations can be harmonized, and whether the caps on damages in these different statutory schemes can be reconciled.

¶ 47. To determine whether Wis. Stat. § 893.80 applies to the UWHCA, we must read § 893.80 with Chapter 655 inasmuch as the legislature intended the two to be read together. If Wis. Stat. § 893.80 conflicts with Chapter 655, Chapter 655 governs.

¶ 48. I would reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings on the plaintiff's complaint.

¶ 49. Before I discuss each question presented in turn, I want to put the present case in context. At least two groups of health care providers work at the UWHCA, side by side: health care providers who are employees of the UWHCA and health care providers who are employees of the University of Wisconsin. As the nonparty brief of the Board of Regents of the University of Wisconsin makes clear, the UWHCA and the University have a mutual interdependence and serve similar purposes.

¶ 50. The employees of the University of Wisconsin are state employees, and tort claims against them are governed by Wis. Stat. § 893.82, not by § 893.80.

Furthermore, the employees of the University of Wisconsin are exempt from Chapter 655.[3]

¶ 51. The employees of the UWHCA, on the other hand, are not state employees; tort claims against them are not governed by Wis. Stat. § 893.82. According to the majority opinion, claims against them are governed by § 893.80, as well as Chapter 655.

¶ 52. Often, both University state employees and employees of the UWHCA are defendants in the same medical malpractice actions. Any interpretation of Wis. Stat. § 893.80 must operate harmoniously with § 893.82 and Chapter 655 so that claimants can proceed with their litigation.

¶ 53. Furthermore, the UWHCA does business ordinarily carried on by private enterprise. Any interpretation of § 893.80 and Chapter 655 must ask the extent to which the legislature would have intended patients of the UWHCA be accorded less protection against medical malpractice than they would have had in a privately operated facility.[4]

¶ 54. In interpreting and applying Wis. Stat. § 893.80 and Chapter 655 to the UWHCA health care providers, a court therefore must consider (1) the comparative statutory treatment of the University state employees and the employees of the UWHCA so that a single lawsuit against both groups of health care providers may proceed with a minimum amount of difficulty

---

[3] Wis. Stat. § 655.003(1); *Suchomel v. Univ. of Wis. Hosp. & Clinics,* 2005 WI App 234, ¶¶ 26–29, 288 Wis. 2d 188, 203–05, 708 N.W.2d 13.

[4] See *Lewis v. Physicians Ins. Co.,* 2001 WI 60, ¶ 25, 243 Wis. 2d 648, 627 N.W.2d 484, in which the court refused to adopt the "captain of the ship" doctrine of physician liability in county hospitals because this doctrine did not apply in private hospitals and application of the doctrine would discourage doctors from working at government hospitals.

for both the claimant and the health care providers, and (2) the comparative statutory treatment of the UWHCA and its employees and their competitors in the private sector.[5]

I

¶ 55. The defendants insist that the UWHCA, which is described in the statutes as a "public body corporate and politic," is a "political corporation" for the purposes of Wis. Stat. § 893.80 and thus claimants must follow the procedural notice of claim requirement set forth in § 893.80. The majority opinion agrees, announcing that "[g]iven the power and structure of the UWHCA, we conclude that it is a 'political corporation.' " Majority op., ¶ 31.

¶ 56. I conclude that a proper statutory interpretation leads to the opposite conclusion. The phrase "political corporation" has to be defined in the context of Wis. Stat. § 893.80 in which it is used.

¶ 57. Wisconsin Stat. § 893.80 establishes the procedure for filing a claim against a volunteer fire company, a political corporation, or a governmental subdivision or agency.[6]

---

[5] "[W]hen the legislature enacts a new statute, it is presumed to know the new statute's relationship with existing and contemporaneously created statutory provisions, especially those directly affecting the statute." *Storm v. Legion Ins. Co.*, 2003 WI 120, ¶ 29, 265 Wis. 2d 169, 665 N.W.2d 353.

[6] Section 893.80(1) states in relevant part that:

Except as provided in subs. (1g), (1m), (1p) and (8), no action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employee of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action [unless certain provisions are complied with] . . . .

¶ 58. If a person or entity falls within one of these enumerated classifications, certain provisions apply, such as Wis. Stat. §§ 893.80(1)(a) and (1m), which establish a 180–day notice of claim requirement,[7] and § 893.80(1g), which provides that an action must be commenced within six months after the government entity disallows the claim,[8] and § 893.80(3), which caps damages at $50,000.[9]

---

[7] Wisconsin Stat. 893.80(1)(a) states in full that:

Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee . . . .

Wisconsin Stat. § 893.80(1m) states in full that:

With regard to a claim to recover damages for medical malpractice, the time period under sub. (1)(a) shall be 180 days after discovery of the injury or the date on which, in the exercise of reasonable diligence, the injury should have been discovered, rather than 120 days after the happening of the event giving rise to the claim.

[8] Wisconsin Stat. § 893.80(1g) states in full that:

Notice of disallowance of the claim submitted under sub. (1) shall be served on the claimant by registered or certified mail and the receipt therefor, signed by the claimant, or the returned registered letter, shall be proof of service. Failure of the appropriate body to disallow a claim within 120 days after presentation of the written notice of the claim is a disallowance. No action on a claim under this section against any defendant fire company, corporation, subdivision or agency nor against any defendant officer, official, agent or employee, may be brought after 6 months from the date of service of the notice of disallowance, and the notice of disallowance shall contain a statement to that effect.

[9] Wisconsin Stat. § 893.80(3) states in full that:

¶ 59. Notably, a "public body corporate and politic," as the UWHCA is defined in Wis. Stat. § 233.02(1), is not included as such in § 893.80. In at least two other statutes, however, the legislature specifically defined "governmental body" for those statutes or subchapters to include the "public body corporate and politic created by constitution, statute, ordinance, rule or order." Wis. Stat. §§ 19.82(1), 895.52(1)(a)3. Accordingly, the legislature's omission of the classification of "public body corporate and politic" from the listing of entities in § 893.80 is telling.

¶ 60. Section 893.80 does not define "political corporation." The majority opinion resorts to the full panoply of definitions from *Black's Law Dictionary* to try to figure out what this phrase means and whether the UWHCA falls within it. Majority op., ¶ 22. None of these definitions is persuasive; none holds the key to interpreting Wis. Stat. § 893.80.[10] According to *Black's*

---

Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 181 or 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000. The amount recoverable under this subsection shall not exceed $25,000 in any such action against a volunteer fire company organized under ch. 181 or 213 or its officers, officials, agents or employees. If a volunteer fire company organized under ch. 181 or 213 is part of a combined fire department, the $25,000 limit still applies to actions against the volunteer fire company or its officers, officials, agents or employees. No punitive damages may be allowed or recoverable in any such action under this subsection.

[10] One term the majority opinion latches onto is "public corporation." The majority opinion, relying on *Black's Law Dictionary,* concludes that a " 'political corporation' is synonymous with the term 'public corporation.' " Majority op., ¶ 22.

*Law Dictionary,* the categories specifically enumerated in § 893.80(1) are synonymous; a "political corporation" is an "agency." Such an interpretation renders the statutory language in § 893.80(1) superfluous and therefore must be incorrect. A "political corporation" must, under the statute, be distinct from a "governmental subdivision or agency."

¶ 61. The majority opinion also examines the nature of the UWHCA to determine whether it constitutes a "political corporation." Majority op., ¶ 23. Paragraphs 24 through 30 describe the UWHCA and its statutorily-enumerated powers and duties. From this overview, the majority opinion concludes that the UWHCA is a "political corporation." Majority op., ¶ 31.

¶ 62. From this overview, I conclude only that the UWHCA is a unique creature, created by statute with a blend of public and private characteristics. *See also Takle v. Univ. of Wis. Hosp. & Clinics Auth.,* 402 F.3d

---

The term "public corporation" can be located throughout the statutes. In § 19.42(5), the legislature defines the term "Department" for purposes of an election law to include "the legislature, the University of Wisconsin System, any authority or public corporation created and regulated by an act of the legislature . . . ." An "authority" is distinguished from a "public corporation" in this particular statute. An "authority" like the UWHCA is not the same thing as a "public corporation." The majority's reliance on this term is misplaced.

The majority opinion also defines a "political corporation" as "an entity created by the legislature that is authorized to implement enactments of the legislature." Majority op., ¶ 22. This definition is broad and lacks meaningful limitation. Countless bodies created by the legislature can satisfy this definition. *See, e.g.,* Wis. Stat. §§ 26.02 (council on forestry), 38.001 (the technical college system), and 42.01 (state fair park board). It also sweeps up other bodies that have been separately listed in § 893.80(1)(a), like volunteer fire companies organized under Chapter 213.

768, 769 (7th Cir. 2005) (Judge Posner describes the UWHCA as "a hybrid entity" with "characteristics of both a state agency and a private foundation.").

¶ 63. Certain attributes of UWHCA reflect the legislative intent that the State provide some oversight of this entity. Other features reflect the legislative intent that the UWHCA operate as an independent body with freedom to make decisions to better compete with private hospitals and other health care providers.

¶ 64. Whether a unique entity like the UWHCA is a "political corporation" under Wis. Stat. § 893.80 requires a more careful analysis of § 893.80 itself. To determine whether an entity is a § 893.80 political corporation requires not just an analysis of the entity but also of the purpose of § 893.80.

¶ 65. The very text of Wis. Stat. § 893.80 demonstrates that the statute is primarily concerned with protecting governmental assets. For instance, sections 893.80(1m) requires that in medical malpractice claims, notice of claim must be given to the political corporation within 180 days of discovery of the injury. This procedural hurdle not only means that otherwise valid claims are quickly invalidated, it also allows the political corporation an opportunity to settle a case without expensive litigation. Section 893.80(1g) shortens the statute of limitation to six months after disallowance of the claim. Once again, this procedural hurdle causes otherwise valid claims to fail quickly. Section 893.80(3) sets a cap on damages of $50,000 (or $25,000 in cases of volunteer fire companies) and disallows punitive damages. Short and simple, section 893.80 is designed to protect the fisc.[11]

---

[11] In *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 293 N.W.2d 504 (1980), this court explained the legislature's role in crafting statutory schemes to protect the public treasury:

¶ 66. As the court explained in *Riccitelli v. Broekhuizen,* 227 Wis. 2d 100, 116, 120, 595 N.W.2d 392 (1999), "[t]he purpose of the notice of claim statute is to enable the government unit to investigate a claim against an employee, to avoid needless litigation, and to settle all reasonable claims" (applying state notice of claim statute, § 893.82(3)) (internal citations omitted). *See also Thorp v. Town of Lebanon,* 2000 WI 60, ¶¶ 23, 28, 235 Wis. 2d 610, 612 N.W.2d 59. The purpose of the cap on damages is to "preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefits the citizenry." *Stanhope v. Brown County,* 90 Wis. 2d 823, 842, 280 N.W.2d 711 (1979) (applying § 895.43 (1971) with a damages cap of $25,000).[12] "This monetary limitation is one which the legislature determines balancing the ideal of equal justice and the need for fiscal security." *Stanhope,* 90 Wis. 2d at 843.

> It is the legislature's function to evaluate the risks, the extent of exposure to liability, the need to compensate citizens for injury, the availability of and cost of insurance, and the financial condition of the governmental units. It is the legislature's function to structure statutory provisions, which will protect the public interest in reimbursing the victim and in maintaining government services and which will be fair and reasonable to the victim and at the same time will be realistic regarding the financial burden to be placed on the taxpayers.

*Id.* at 377.

In *Lewis v. Physicians Ins. Co.,* 2001 WI 60, ¶ 25 n.18, 243 Wis. 2d 648, 627 N.W.2d 484, involving a county hospital, the court explained that the $50,000 cap for damages in Wis. Stat. § 893.80 was a legislative decision regarding the financial burden to be placed on the taxpayers.

[12] The *Stanhope* court also explained that "limited liability is needed to protect governmental functions." 90 Wis. 2d at 842.

¶ 67. With this purpose of Wis. Stat. § 893.80 in mind, I am persuaded that UWHCA is not a "political corporation" under § 893.80. The government's fisc is not at issue in an action against the UWHCA. The UWHCA operates financially independent of the State and any other governmental entity. No governmental body is financially accountable to the UWHCA and the UWHCA is not financially accountable to any governmental body.[13] The legislature expressly created the UWHCA as a financially independent entity. For instance, Wis. Stat. § 233.17 provides that the State and any governmental bodies will not be liable for the debts and obligations of the UWHCA.[14] Likewise, § 233.22 provides that the bonds issued by the UWHCA do not financially obligate the State.[15]

---

[13] The UWHCA has recognized as much in its 2005 Annual Report, which states that "[a]lthough the Authority remains closely connected to the University and the Medical School through its various agreements, UWHC[A] receives no financial support from the University or the State of Wisconsin."

A report entitled *An Evaluation: University of Wisconsin Hospitals and Clinics Authority* (June 2001), prepared (as required by Wis. Stat. § 13.94) by Wisconsin's Joint Legislative Audit Committee describes the UWHCA as an "independent, nonprofit entity." *Takle v. Univ. of Wis. Hosp. & Clinics Auth.*, 402 F.3d 768, 770 (7th Cir. 2005).

*See also id.* at 769 ("The hospital is not financed by the state . . . ").

[14] Wisconsin Stat. § 233.17 provides that "[n]either the state, any political subdivision of the state nor any officer, employee or agent of the state or a political subdivision who is acting within the scope of employment or agency is liable for any debt, obligation, act or omission of the authority."

[15] Wisconsin Stat. § 233.22 states in pertinent part that: "Bonds are not public debt. (1) The state is not liable on bonds and the bonds are not a debt of the state."

¶ 68. The UWHCA retains its own revenues.[16] Its operating revenues for the fiscal year 2005 were in excess of $676,200,000. The UWHCA is not subject to the budgeting approval that governmental bodies must submit to and participate in. The UWHCA approves its own budget without participation by the governor, the Department of Administration, the joint committee on finance, or the legislature. Furthermore, the UWHCA is exempt from preaudit and postaudit of its expenditures by the Department of Administration.[17]

¶ 69. Consequently, the legislature does not need to limit the UWHCA's debt exposure out of a need to protect governmental assets, or the public treasury, or taxpayers. Holding that the UWHCA is a "political corporation" and subject to the protections of Wis. Stat. § 893.80 does not comport with the purpose of § 893.80.[18]

***

[16] The UWHCA keeps its operating funds in its own accounts outside of the state treasury and invests its funds independent of the investment board, except that it may deposit moneys with the investment board for investment as part of the local government-pooled investment fund.

[17] The UWHCA does, however, have to provide periodic reports to the Department of Administration, the legislature, the governor and the Board of Regents, pursuant to § 233.04(4); however, no provision of Chapter 233 allows any of these bodies to take immediate remedial action if the UWHCA acts outside of its Chapter 233 powers and duties.

[18] Judge Posner, writing for the Seventh Circuit in *Takle* and discussing government immunity, examined the statutes to determine the attributes of UWHCA. After recounting the creation of the UWHCA, the court announced that the statutes were "describing the privatization of a formerly public function" and that "[t]he strings that tie the hospital to the state are found in many cases in which a state decides to privatize a formerly state function. They do not require that privatization be treated as a farce in which the privatized entity enjoys the benefits both of not being the state and so being freed from the regulations

¶ 70. The legislature recreated the University of Wisconsin Hospitals and Clinics as UWHCA to enable the UWHCA to be competitive with the private sector in changing commercial circumstances. But giving the UWHCA coverage under Wis. Stat. § 893.80 is far outside what is necessary to make the UWHCA competitive with other hospitals.

¶ 71. Wisconsin Stat. § 893.80 refers to medical malpractice but makes no reference to Chapter 655. The reference to medical malpractice in § 893.80 makes sense because health care professionals who are county or municipal employees are covered by § 893.80 but are exempt from Chapter 655.[19]

¶ 72. Had the legislature wanted to include the UWHCA within Wis. Stat. § 893.80, the legislature could have expressly done so. In creating the UWHCA, the legislature specifically and expressly referred to the UWHCA in over 50 statutes.[20] *See* 1995 Wis. Act. 27. Some of these amendments specifically include the UWHCA within a statute;[21] some explicitly exempt the

---

that constrain state agencies, and of being the state and so being immune from suit in federal court." *Takle,* 402 F.3d at 770–71.

[19] Wis. Stat. § 655.003(1).

[20] *See* Wis. Stat. §§ 11.36, 13.094, 13.48, 13.95, 15.07, 15.96, 16.004, 16.008, 16.15, 16.50, 16.505, 16.61, 16.611, 16.62, 16.72, 16.73, 16.75, 16.765, 16.845, 16.85, 19.42, 19.45, 20.921, 24.61, 25.17, 36.11, 36.25, 40.02, 40.05, 40.22, 40.52, 40.81, 40.95, 45.03, 45.27, 46.041, 46.10, 46.115, 46.22, 66.603, 70.11, 70.119, 71.26, 77.54, 100.45, 101.177, 103.49, 111.02, 111.05, 111.075, 111.115, 111.17, 111.815, 111.825, 111.92, 115.53, 137.20, 146.185, 146.59, 165.40, 219.09, 230.09, 230.29, 230.36, 230.90, 231.01, 285.59.

[21] *See, e.g.,* Wis. Stat. §§ 103.49(1)(f), 165.40(1)(f) (including the UWHCA as a "state agency"); § 16.004(12)(a) (excluding the UWHCA from the definition of "state agency" although specifically including "authority" and "independent agency").

UWHCA from coverage by a statute.[22]

¶ 73. It is telling that the legislature failed to amend Wis. Stat. § 893.80 to include the UWHCA, especially given the unique nature of the UWHCA, which blends characteristics of public and private entities. If the legislature had wanted to make sure that the UWHCA was considered a "political corporation" for section 893.80 purposes, it could have explicitly done so.

¶ 74. It is clear that the UWHCA is not a "political corporation" subject to Wis. Stat. § 893.80.

## II

¶ 75. Because the instant case is a medical malpractice action, I must determine, as the court asked the litigants to do, whether Chapter 655 applies to the UWHCA or its employees and examine the extent to which Chapter 655 and § 893.80 can be harmonized.

¶ 76. Chapter 655 was enacted by the legislature to govern medical malpractice actions. Participation in Chapter 655 is mandatory for "health care providers," unless the particular health care provider is expressly exempted.[23]

¶ 77. The term "health care provider" is defined by statute. The UWHCA and its employees are "health care providers" as defined by Wis. Stat. § 655.002. Indeed, the defendants do not argue that the UWHCA and its employees do not satisfy these statutory provisions.

¶ 78. The defendants instead insist that the UWHCA and its employees are exempt from Chapter 655 by virtue of Wis. Stat. § 655.003(2), which exempts from Chapter 655 coverage "[a] facility that is . . . operated by

---

[22] *See, e.g.,* Wis. Stat. § 16.004(12)(a) (excluding the UWHCA from the definition of "state agency" although specifically including "authority" and "independent agency").

[23] Wis. Stat. §§ 655.006, .007.

any governmental agency." The majority opinion does not address the defendants' argument. I shall.[24]

¶ 79. Not surprisingly, the defendants assert that the UWHCA is a "facility operated by a governmental agency" and thus that the UWHCA is exempt from Chapter 655. Although the defendants' primary argument has been that the UWHCA is a "political corporation" under Wis. Stat. § 893.80 (rather than a "governmental agency"), in supplemental briefs before this court, defendants assert that the UWHCA is a "governmental agency" under § 655.003(2).

¶ 80. The defendants argue that the terms "political corporation" and "governmental agency" are used broadly and interchangeably.[25] If the defendants were correct (which they are not) that the UWHCA is a "political corporation" under § 893.80, then the UWHCA cannot be exempt under § 655.003(2) as a "governmental agency."[26] Such an interpretation would render the classifications of "political corporation" and "governmental agency" in § 893.80 redundant and superfluous.[27]

---

[24] In a footnote in *Lewis v. Physicians Ins. Co.*, 2001 WI 60, ¶ 25 n.18, 243 Wis. 2d 648, 627 N.W.2d 484, the court declared that it took "judicial notice" that "there are only three government-owned [hospital] facilities in Wisconsin," one of which is the UWHCA. The court did not define "government-owned facility."

[25] Supplemental Brief and Appendix of Defendants-Respondents at 3.

[26] The Analysis supplied by the Legislative Reference Bureau on the bill which created Chapter 233 and the UWHCA specifically states that "the authority is not a state agency." *See* Plaintiff-Appellant-Petitioner's Opening Brief at A-App. 92.

[27] Such an interpretation is also at odds with the rest of the statute. Chapter 655 specifically includes "corporations" within

¶ 81. Further, reading together Wis. Stat. § 655.003(1) (exempting state, county and municipal employees from ch. 655) and § 655.003(2) (exempting a facility operated by the governmental agency from ch. 655) would mean that a facility operated by a governmental agency under § 655.003(2) refers to a facility operated by the state, a county, or a municipality. The defendants' suggested interpretation does not make sense.

¶ 82. Even if the UWHCA were a facility operated by a governmental agency and exempt from Chapter 655 under § 655.003(2), aren't its employees still governed by Chapter 655? Only physicians who are state, county, or municipal employees are exempt in § 655.003(1); employees of governmental agencies or facilities are not exempt from Chapter 655. *See* Wis. Stat. § 655.003(1).

¶ 83. Notably, the legislature did not provide a specific exemption for the UWHCA and its employees in Chapter 655 as it did elsewhere in the Wisconsin statutes. In the absence of such an exemption, I conclude that the legislature intended that the UWHCA and its employees be treated as "health care providers" and to be subject to the same provisions governing medical malpractice actions as private health care providers.

¶ 84. It is noteworthy (but not dispositive, of course) that the UWHCA has treated itself as a health care provider bound by the terms of Chapter 655. The UWHCA has consistently held itself out as a Chapter

---

the mandatory participation provisions: "Except as provided in s. 655.003, this Chapter applies to all of the following: . . . (e) A corporation organized and operated in this state for the primary purpose of providing the medical services of physicians or nurse anesthetists." Wis. Stat. § 655.002(1)(e).

655 health care provider and actively followed the requirements of Chapter 655.[28] The UWHCA has issued public documents that acknowledge that Chapter 655 applies to it and its employees. The UWHCA's own liability coverage brochure states that the UWHCA and employees are covered by Chapter 655. Chapter 655 mandates that, pursuant to Wis. Stat. § 655.23(4), each health care provider have liability insurance of one million dollars. Although § 893.80(3) provides a damages cap of $50,000, the UWHCA and its employees carry the insurance with limits of one million dollars. The UWHCA has also paid assessments to the Wisconsin Injured Patients and Families Compensation Fund ("the Fund"), as Chapter 655 health care providers are required to do.

¶ 85. I agree with the majority opinion that the UWHCA and its employees are Chapter 655 health care providers.

### III

¶ 86. Having determined that the UWHCA is not a "political corporation" governed by Wis. Stat. § 893.80, but rather is governed by Chapter 655, I would simply apply the provisions of Chapter 655 to the UWHCA and its employees in the instant case. End of story!

¶ 87. Even if I were to agree with the majority opinion that the UWHCA is a "political corporation" under Wis. Stat. § 893.80, I would apply a more rigorous and meaningful analysis of the relationship between Chapter 655 and § 893.80 to determine whether the

---

[28] The UWHCA's annual report also explains that it is independent and receives no financial support from the state; it identifies the UWHCA as the "[l]argest private employer in Madison."

legislature intended that these statutory systems be applied simultaneously to the UWHCA.[29]

¶ 88. The majority opinion does not engage in this inquiry. What the majority fails to grasp is that if Wis. Stat. § 893.80 and Chapter 655 cannot be readily harmonized, then the legislature likely would not have intended them to be applied simultaneously to the UWHCA.

¶ 89. As a starting point and as a comparison, I note that the health care providers who are University state employees are exempted from Chapter 655 pursuant to § 655.003(1). As a result, an action brought against these individuals is subject to a notice of claim requirement and other procedural requirements under § 893.82 but is not subject to Chapter 655. Commencing medical malpractice claims against the University state employees seems straightforward and clear. It seems a fair assumption that the legislature would impose a similarly straightforward and clear procedural framework for commencing medical malpractice claims against the UWHCA and its employees.

¶ 90. Turning to the instant case, I agree with the majority opinion and our case law that provisions outside Chapter 655 can govern medical malpractice cases.[30] The recent decision in *Storm v. Legion Ins. Co.,* 2003 WI

---

[29] A fundamental rule of statutory construction is that statutes are examined in pari material, not in isolation. "In construing a statute, the entire section and related sections are to be considered in its construction or interpretation. . . ." *State v. Clausen,* 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982) (internal citations omitted).

[30] The court has explained that "Chapter 655 is not exclusive in the sense that it is a *comprehensive* set of procedural rules for medical malpractice claims. Numerous statutes, including civil procedure and discovery statutes, that are not

120, ¶ 35, 265 Wis. 2d 169, 665 N.W.2d 353, however, instructs that "if general statutory provisions *conflict with* Chapter 655, the latter will trump the general statute."

¶ 91. Chapter 655 and § 893.80 both contain provisions governing the commencement of an action, statutes of limitations,[31] and caps on damages.[32] Trying to harmonize these statutes raises many questions.

¶ 92. First, regarding the commencement of an action, Chapter 655 carefully enumerates the steps a claimant must follow in commencing a medical malpractice action. Section 655.009 provides instructions for how to file a complaint against a health care provider.[33]

---

located in Chapter 655 apply to claims brought for medical malpractice." *Storm,* 265 Wis. 2d 169, ¶ 34.

[31] Wisconsin Stat. § 893.55 provides the statute of limitations for actions against "health care providers" and is applicable in Chapter 655 actions. *See, e.g., Ocasio v. Froedtert Mem'l Lutheran Hosp.,* 2001 WI App 264, 248 Wis. 2d 932, 637 N.W.2d 459.

[32] Wisconsin Stat. §§ 655.017 and 893.55 provide the relevant caps on damages for Chapter 655 actions.

[33] Section 655.009 provides as follows:

Actions against health care providers. An action to recover damages on account of malpractice shall comply with the following:

(1) Complaint. The complaint in such action shall not specify the amount of money to which the plaintiff supposes to be entitled.

(2) Medical expense payments. The court or jury, whichever is applicable, shall determine the amount of medical expense payments previously incurred and for future medical expense payments.

(3) Venue. Venue in a court action under this chapter is in the county where the claimant resides if the claimant is a resident of this state, or in a county specified in s. 801.50(2)(a) or (c) if the claimant is not a resident of this state.

¶ 93. Section 655.43 provides that the parties must participate in mediation.[34] The legislature explained its intent in making mediation mandatory for medical malpractice claims as follows: "The legislature intends that the mediation system provide the persons under sub. (2) with an informal, inexpensive and expedient means for resolving disputes without litigation and intends that the director of state courts administer the mediation system accordingly." Wis. Stat. § 655.42(1).

¶ 94. Chapter 655 addresses the timing of the mediation vis-à-vis a "court action." The mediation provisions require that a request for mediation be filed either before or in conjunction with the filing of a claim;[35] they provide for tolling the statute of limitations;[36] and they instruct how notice for mediation is to be provided.[37]

¶ 95. Section 893.80(1m), on the other hand, requires that a notice of claim against a political corporation be filed within 180 days of the discovery of the injury.[38] No court action may be commenced before the claim is disallowed.

---

[34] Wisconsin Stat. § 655.43 states in full: "Mediation requirement. The claimant and all respondents named in a request for mediation filed under s. 655.44 or 655.445 shall participate in mediation under this subchapter."

[35] Wis. Stat. §§ 655.44, .445.

[36] *Id.*

[37] Wis. Stat. § 655.455.

[38] The majority opinion queries the purpose of § 893.80's specifically addressing medical malpractice actions, if Chapter 655 is to be exclusive. The answer is obvious. Chapter 655 does not apply to state, county, and municipal employees and does not apply to facilities operated by a governmental agency. Section 893.80(1m) addresses medical malpractice claims brought against these individuals and entities that the legislature expressly and explicitly exempted from Chapter 655.

¶ 96. In one sense, the Chapter 655 mediation provisions and the notice requirements of § 893.80 have similar purposes; both are motivated by a desire to have claims settled without a costly litigation battle. However, the means of avoiding costly and contentious litigation are different: Chapter 655 mandates a special mediation process with a carefully designed panel of specialists, and § 893.80 requires notice to allow the governmental body to investigate the claim and determine whether to disallow it or to settle. The former empowers both parties to reach a settlement; the latter gives the political corporation the power to choose which course to pursue. The notice of claim does not mandate settlement discussions nor will it necessarily lead to them. Chapter 655, however, demands that the parties come together and at least try to settle before the litigation advances.

¶ 97. Furthermore, notice of claim provisions and mediation result in duplicitous proceedings, tending to cancel each other out and in combination actually defeat the purposes of each provision. Requiring mediation after a claim is disallowed will likely increase costs and delay proceedings. Requiring that the claim be disallowed while mediation proceedings are ongoing will likely undermine the effectiveness and sincerity of the mediation proceedings.

¶ 98. Trying to harmonize these competing provisions raises many questions, including but not limited to the following: In what order shall the respective notices be filed? Should the claimant file the request for mediation simultaneously with the notice of claim or after disallowance? How does the mediation period fit within the 180–day timeframe under Wis. Stat. § 893.80? Does the request for mediation toll the 180–day notice requirement or the 6–month statute of limitations under § 893.80 or both?

¶ 99. One answer is certain. If the notice of claim requirements under Wis. Stat. § 893.80 and the mediation provision under Chapter 655 must both be satisfied, litigants will have to engage in very careful timing to comply with both sets of provisions.

¶ 100. Second, Chapter 655 and Wis. Stat. § 893.80 have different statutes of limitation.

¶ 101. For actions brought under Chapter 655, the general medical malpractice statute of limitations normally applies. *See* Wis. Stat. § 893.55(1). The statute of limitations is ordinarily three years from the date of injury or one year from the date the injury was discovered (or with reasonable diligence should have been discovered) as long as it is within five years of the date of the act or omission. Wis. Stat. § 893.55(1).

¶ 102. On the other hand, under Wis. Stat. § 893.80(1g), "no action on a claim under [§ 893.80] . . . may be brought after 6 months from the date of service of the notice of disallowance, and the notice of disallowance shall contain a statement to that effect."

¶ 103. Seemingly only one statute of limitations can apply. Which will it be? Wisconsin Stat. § 893.80(1g) or § 893.55(1)?

¶ 104. The defendants take the position that Wis. Stat. § 893.80(1g) applies. The defendants argue that Wis. Stat. § 893.80(1g), which provides for a six-month statute of limitations, is the specific provision for "political corporations" and trumps the general statute of limitations for Chapter 655. But isn't it just as reasonable to assert that § 893.80 is the general statute of limitations for all suits against "political corporations" and that § 893.55 is the specific statute for a medical malpractice suit and therefore trumps? If the six-month statute of limitations does apply, how is it reconciled with the required mediation period under Chapter 655?

403

¶ 105. Trying to answer these and other questions and map out exactly what steps a litigant (either the plaintiff or the defendant) should follow when a claim is brought against the UWHCA and its employees is tricky. A skillful and very meticulous lawyer could probably figure out a way to meet all of the deadlines and comply with all of the procedures. But when I tried to plot it out, I gave up after several tries.

¶ 106. Third, Chapter 655 and Wis. Stat. § 893.80 provide for different caps on damages. Under Chapter 655, there probably was no cap on damages at the time this action was commenced.[39] Under Wis. Stat. § 893.80, damages recoverable against a political corporation for any injuries are capped at $50,000. Wis. Stat. § 893.80(3). Which cap on damages governs in a medical malpractice action against the UWHCA or its employees?

¶ 107. The defendants state that they need not address this issue because the only issue before the court is the 180-day notice of claim. The cap on damages, however, is an "elephant" present in any attempt to interpret the relationship between Wis. Stat. § 893.80 and Chapter 655.

¶ 108. In sum, Chapter 655 and Wis. Stat. § 893.80 in the instant case cannot easily be harmonized. No doubt future litigation will arise as litigants will grapple with satisfying both Chapter 655 and § 893.80. The court likely will manage to find a way to fit these two together, just like a square peg can eventually be hammered into a round hole. Even

[39] The court has held that the caps under Wis. Stat. § 893.55 violated the Wisconsin Constitution. *See Ferdon ex rel. Petrucelli v. Wis. Patients Comp. Fund,* 2005 WI 125, ¶ 10, 284 Wis. 2d 573, 701 N.W.2d 440 (holding damage cap unconstitutional).

though the resulting fit is awkward and not true to either original shape, nonetheless it can be accomplished.

¶ 109. But whether Chapter 655 and Wis. Stat. § 893.80 can be forcefully "reconciled" is not the point in the present case. The point here is that in determining whether the 180–day notice provision should apply to the UWHCA and its employees requires a thoughtful analysis of how Chapter 655 operates with the requirements of Wis. Stat. § 893.80. If Chapter 655 and § 893.80 do not harmonize in a way that litigants can sensibly follow, then the legislature likely did not intend for Chapter 655 and § 893.80 to apply simultaneously to the same entity.

¶ 110. The majority opinion creates a confusing and conflicting maze of procedural steps and substantive provisions under both Wis. Stat. § 893.80 and Chapter 655 for medical malpractice claimants who want to file actions against the UWHCA and its employees. This complexity flies in the face of the legislature's stated intention that Chapter 655 and its focus on mediation serve as "an informal, inexpensive and expedient means for resolving disputes." Wis. Stat. § 655.42(1). The difficulty of bringing these lawsuits is only multiplied when the suit is also against the University of Wisconsin and its state employees, subject to § 893.82.

¶ 111. The court has had numerous cases over the years as litigants and governmental bodies have had trouble complying with Wis. Stat. § 893.80. The majority opinion only adds a new body of cases to this mix.

¶ 112. In any event, in addition to case law establishing that Chapter 655 trumps conflicting statutory provisions, Wis. Stat. § 893.80(5) restricts the application of Wis. Stat. § 893.80 when it conflicts with

other statutes. This provision is not examined or even mentioned by the majority opinion. Section 893.80(5) states in pertinent part:

> When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employee thereof for injury, damage or death, such statute shall apply and the limitations in sub. (3) shall be inapplicable.

¶ 113. In *State ex rel. Auchinlek v. Town of LaGrange,* 200 Wis. 2d 585, 547 N.W.2d 587 (1996), this court examined and applied § 893.80(5).[40] In *Auchinlek,* the plaintiffs brought suit under the open records and open meetings law, but did not provide notice to the governmental body pursuant to § 893.80.

¶ 114. The *Auchinlek* court noted that "[b]oth the open records and open meetings laws set forth specific enforcement mechanisms to force governmental entities to comply with those laws." *Id.* at 592. The court reasoned that enforcing the notice provisions of § 893.80 would undermine the purpose of and would conflict with the open meeting and open records laws. *Id.* at 593. The court also reasoned that "Wis. Stat. § 893.80(5) expressly states that specific rights and remedies provided by other statutes take precedence over the provisions of § 893.80." *Id.* at 596. Accordingly, the *Auchinlek* court concluded that the plaintiff was not

---

[40] *Compare DNR v. City of Waukesha,* 184 Wis. 2d 178, 192–93, 515 N.W.2d 888 (1994) (concluding that Wis. Stat. § 893.80(5) "only directs that when a claim is based on another statute, the *damage limitations* of sec. 893.80(3) do not apply. Section 893.80(5) does not say that the notice provisions of sec. 893.80(1) do not apply.").

bound by the notice provisions of § 893.80 and could continue his suit without having first given notice under § 893.80.[41]

¶ 115. Likewise, in *Gillen v. City of Neenah*, 219 Wis. 2d 806, 580 N.W.2d 628 (1998), the court once again addressed whether the notice provisions conflicted with other statutory provisions and were thus inapplicable. In *Gillen*, the plaintiff sought injunctive relief pursuant to § 30.294, which the court recognized as "expressly allow[ing] a plaintiff to seek immediate injunctive relief to prevent injury." *Id.* at 822.

¶ 116. The *Gillen* court recognized that "[t]he enforcement procedures provided in § 30.294, are inconsistent with Wis. Stat. § 893.80(1)(b), which requires a plaintiff to provide a governmental body with a notice of claim, and to wait 120 days or until the claim is disallowed before filing an action." *Id.* The court concluded, like in *Auchinlek*, that "the general application of § 893.80(1)(b) in this case frustrates the plaintiffs' specific right to injunctive relief under § 30.294." *Id.*

¶ 117. Even if Wis. Stat. § 893.80 applies to UWHCA and its employees, the instant case is like *Auchinlek* and *Gillen,* in which the specific provisions in Chapter 655 and section 893.55 supersede the general provisions of § 893.80.

---

[41] The *Auchinlek* court specifically concluded that "The specific enforcement provisions of Wis. Stat. §§ 19.31 and 19.81 take precedence over the general notice provisions of § 893.80(1). Accordingly, we conclude that actions brought under the open records and open meetings claims laws are exempt from the notice provisions of § 893.80(1)." *State ex rel. Auchinlek v. Town of LaGrange,* 200 Wis. 2d 585, 597, N.W.2d 587 (1996) (footnotes omitted). Section 893.80 was amended to incorporate the *Auchinlek* decision. *See* Wis. Stat. § 893.80(8).

\* \* \* \* \*

¶ 118. In sum, I conclude that the UWHCA is a "health care provider" under Chapter 655 but not a "political corporation" under Wis. Stat. § 893.80. The notice provisions of § 893.80 do not apply to a medical malpractice claim brought against the UWHCA and its employees.

¶ 119. For the foregoing reasons, I dissent.