In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 13-3783

JOHN DOE, Claimant A-282,

*Appellant*,

*v.*

ARCHDIOCESE OF MILWAUKEE,

*Debtor-Appellee*.

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-CV-00419 — **Rudolph T. Randa**, *Judge*.

———————————

ARGUED JUNE 2, 2014 — DECIDED NOVEMBER 5, 2014

———————————

Before FLAUM and WILLIAMS, *Circuit Judges*, and DOW, *District Judge*.[*]

———————————

[*]Of the United States District Court for the Northern District of Illinois, sitting by designation.

WILLIAMS, *Circuit Judge*. "John Doe" settled his sexual abuse claims against the Archdiocese of Milwaukee for $80,000 after participating in a voluntary mediation program. He later filed a claim against the Archdiocese in its bankruptcy proceedings for the same sexual abuse. Doe responded to the Archdiocese's motion for summary judgment by contending that his settlement was fraudulently induced. This argument depends upon statements made during the mediation, but Wisconsin law prohibits the admission in judicial proceedings of nearly all communications made during mediation. Doe maintains an exception applies here, namely that the later action is "distinct from the dispute whose settlement is attempted through mediation." Wis. Stat. § 904.085(4)(e). We, however, conclude that Doe's bankruptcy action is not distinct from the dispute settled in mediation. The issue in both proceedings, which involved the same parties, is the Archdiocese's responsibility for the sexual abuse Doe suffered. Doe seeks damages in both the mediation and bankruptcy for the same sexual abuse; he does not seek separate or additional damages for the alleged fraudulent inducement. We conclude the exception in Wisconsin Statute § 904.085(4)(e) does not apply, and so we affirm the judgment of the district court.

## I. BACKGROUND

John Doe, who is deaf, attended St. John's School for the Deaf in Milwaukee, Wisconsin. He was sexually abused as a student there in 1974, when he was seventeen years old, by Father Lawrence Murphy. Doe participated in the Archdiocese of Milwaukee's voluntary mediation program in 2007. He reached a settlement of $80,000 for his claims against the Archdiocese for fraud, negligence, and sexual battery. Doe

signed a settlement agreement containing a confidentiality clause, another clause providing that the parties could not introduce as evidence in later proceedings matters including views expressed or admissions made during the mediation proceedings, and a provision stating that the settlement was entered into "to otherwise resolve and settle all disputes between them." These included "all claims of any nature that [Doe] has against the Archdiocese … arising from any sexual abuse of [Doe] by Murphy …"

The Archdiocese filed for relief under Chapter 11 of the United States Bankruptcy Code four years later. Doe filed a proof of claim (he is Claimant A-282) in the Archdiocese's bankruptcy proceeding for sexual abuse inflicted on him by Murphy. The proof of claim states that Doe was sexually abused by Murphy in 1974 and details the abuse. The Archdiocese objected to Doe's proof of claim on the basis that he participated in a mediation and executed a settlement agreement with a complete release in 2007 and moved for summary judgment.

Doe opposed the motion on the basis that he was fraudulently induced into settlement with the Archdiocese. Doe stated in an affidavit that the Archdiocese told him during mediation that $80,000 was the maximum amount of money it had available to pay him, that all the other sexual abuse survivors who signed settlement agreements were receiving $80,000, and that it would not be fair to pay him more than others. Doe also stated that the Archdiocese did not inform him that it was paying priests $10,000 to $20,000 to leave the Church and that he did not realize the extent of the Archdiocese's knowledge about Murphy's past history of abusing children. Doe asserts in the affidavit that had he known all

this information, he would not have agreed to settle his claims for $80,000. Doe's brief on appeal states that the Archdiocese settled claims with some other survivors of sexual abuse for amounts from $100,000 to $200,000.

The bankruptcy court initially ruled that the bankruptcy action and 2007 mediation were distinct disputes and that admission of communications made during the mediation was necessary to prevent manifest injustice. As a result, it concluded that statements made in the mediation were admissible under Wisconsin Statute § 904.085(4)(e). The Archdiocese then subpoenaed the mediator who presided over Doe's mediation session. The mediator filed a motion to quash the subpoena, and the bankruptcy court allowed further briefing by the parties and held a hearing. The bankruptcy court reconsidered its earlier ruling and held that the bankruptcy proceeding and mediation were not distinct disputes, and, therefore that communications in the mediation were not admissible. It granted summary judgment in favor of the Archdiocese on Doe's fraudulent inducement claim, and the district court affirmed that decision. Doe appeals.

## II. ANALYSIS

Federal Rule of Procedure 56(a) provides that summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That same standard applies in bankruptcy proceedings as well. Fed. R. Bankr. P. 7056. We review the grant of summary judgment to the Archdiocese de novo. *See In re Solis*, 610 F.3d 969, 971 (7th Cir. 2010).

Doe maintains that the statements in his affidavit create a genuine issue of material fact and that summary judgment should not have been granted on his claim. The Archdiocese, however, contends that evidence of statements made during the mediation proceedings on which Doe relies is inadmissible under Wisconsin's mediation privilege statute.

This is a federal court proceeding, so the first question is whether Wisconsin's privilege law applies or whether federal common law controls. Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." That same rule governs actions in the bankruptcy court. *See* Fed. R. Bankr. P. 9017. Doe argues that because his case is a federal bankruptcy case, state privilege law does not apply. But Doe's claim in the bankruptcy proceeding is a Wisconsin state-law claim of fraudulent inducement. Indeed, the only authority Doe cites in support of his fraudulent inducement claim is Wisconsin state law. *See* Appellant Br. at 10 (citing *Kailin v. Armstrong*, 643 N.W.2d 132, 145-46 (Wis. Ct. App. 2002)). Wisconsin law provides the rule of decision governing Doe's fraudulent inducement contention, and because it does, Wisconsin mediation privilege law applies. *Cf. Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) (state-law privilege does not apply in federal question suits); *Mem. Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (applying federal common law where claim arose out of federal Sherman Act).

Under Wisconsin law, "no oral or written communication relating to a dispute in mediation made or presented in mediation by the mediator or a party is admissible in evidence or subject to discovery or compulsory process in any judicial

or administrative proceeding." Wis. Stat. § 904.085(3)(a). There are exceptions, however, including the one at issue here, which provides:

> In an action or proceeding distinct from the dispute whose settlement is attempted through mediation, the court may admit evidence otherwise barred by this section if, after an *in camera* hearing, it determines that admission is necessary to prevent a manifest injustice of sufficient magnitude to outweigh the importance of protecting the principle of confidentiality in mediation proceedings generally.

Wis. Stat. § 904.085(4)(e).

When interpreting a state statute, we apply the same principles of statutory construction that a state court would apply. *See Karlin v. Foust*, 188 F.3d 446, 457 (7th Cir. 1999). Wisconsin courts begin their statutory interpretation by focusing on the plain language of the statute. *State ex rel. Kalal v. Circuit Court of Dane Cnty.*, 681 N.W.2d 110, 124 (Wis. 2004). That is because "[j]udicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute," which is given its "common, ordinary, and accepted meaning." *Id.*

Doe argues that a manifest injustice would result if the statements from his mediation are not admitted. In support he argues there was a disparity of power during the mediation (Doe is deaf and did not have legal counsel with him at the mediation, although the Archdiocese says it did not either), maintains the Archdiocese misrepresented the amount it paid to other sexual abuse survivors in settlements and its

ability to pay him, and contends the Archdiocese failed to
disclose information to him regarding Murphy's history of
abusing children. But as Doe recognizes, the text of §
904.085(4)(e) makes clear that the "manifest injustice" in-
quiry only arises if the proceeding is one that is "distinct
from the dispute" whose settlement was attempted through
mediation. Wisconsin does not allow the admission of medi-
ation communications solely on the basis that manifest injus-
tice would result were they not admitted. Rather, the dis-
putes must be distinct. The threshold question here, then, is
whether the claim Doe asserts in bankruptcy is an action or
proceeding distinct from the dispute that was settled in the
2007 mediation.

There is little guidance addressing Wisconsin's "distinct
from the dispute" requirement. The only Wisconsin appel-
late court to touch on the issue came in an unpublished deci-
sion, *In re Paternity of Emily C.B.*, 2004 WL 240227 (Wis. Ct.
App. Feb. 11, 2004) (per curiam) (unpublished). There the
court allowed a tape of a civil litigation mediation session to
be admitted in a custody dispute to shed light on one parent
as being quick to anger, *id.* at *3, although the court did not
discuss explicitly whether the disputes were distinct. And
Wisconsin's law is unique; no other state has a "distinct from
the dispute" threshold in its mediation privilege statute.

We turn then to the language of the statute: "an action or
proceeding distinct from the dispute whose settlement is at-
tempted through mediation." Wis. Stat. § 904.085(4)(e). A
typical dictionary definition defines "dispute" to mean a
"verbal controversy; a debate" or a "disagreement or quar-
rel." *See* https://ahdictionary.com/wor/search.html?q=dispute
(last visited Oct. 30, 2014); *In re Commitment of Curiel*, 597

N.W.2d 697, 405-07 (Wis. 1999) (turning to American Heritage Dictionary to help ascertain plain and ordinary meaning of term in statute). Black's Law Dictionary defines "dispute" as a "conflict or controversy, esp. one that has given rise to a particular lawsuit." (9th ed. 2009). Of course dictionary definitions are not the end-all of statutory interpretation and should be used with caution, *United States v. Costello*, 666 F.3d 1040, 1043-44 (7th Cir. 2012), but we find the definitions provide some assistance here in ascertaining the meaning of the statute, *see Rouse v. Theda Clark Med. Ctr., Inc.*, 735 N.W.2d 30, 37 (Wis. 2007) (using dictionary definition to help construe meaning of word in statute). Absent from the statute and the dictionary definitions of "dispute" is any reference to "claim," a term Doe seems to wish to import into the statute (though even that might not help him).

In contending that the disputes in mediation and bankruptcy are distinct, Doe emphasizes that the elements of fraudulent inducement are different from the elements of fraud, negligence, or sexual battery. *See Kailin*, 643 N.W.2d  at 145-46 (fraudulent inducement); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 252 n.38 (Wis. 2004) (fraud); *Brandenburg v. Briarwood Forestry Servs., LLC*, 847 N.W.2d 395, 397 (Wis. 2014) (negligence); *Vandervelden v. Victoria*, 502 N.W.2d 276, 278 (Wis. Ct. App. 1993) (battery). Doe also argues that the two proceedings were based on different conduct. In the mediation, the underlying conduct was the allegation that the Archdiocese allowed Murphy to work with children. Doe maintains that in the bankruptcy, the relevant conduct is the Archdiocese's alleged misrepresentations and non-disclosures during the mediation session.

But in both the bankruptcy and the mediation, the subject matter of the dispute is the Archdiocese's responsibility for Doe's abuse by Murphy. Doe's proof of claim in the bankruptcy proceeding was for the sexual abuse inflicted by Murphy and detailed the abuse he suffered from Murphy. It does not mention fraudulent inducement. The mediation, which involved the same parties as the bankruptcy claim, also concerned the question of the Archdiocese's responsibility for Murphy's abuse of Doe. In both proceedings, Doe seeks to recover monetary damages from the Archdiocese for Murphy's sexual abuse. *See* Appellant Br. at 12 ("Although the bankruptcy claim involves the sexual abuse John Doe experienced as a child, the underlying dispute is how the Archdiocese fraudulently induced him into settlement in 2007 …"). Doe's counsel also made clear at oral argument that Doe is not seeking independent damages for the alleged fraudulent inducement; the damages he seeks are only for the sexual abuse by Murphy.

Finding the disputes not to be distinct is also consistent with the Wisconsin legislature's express purpose in enacting its mediation privilege statute. The statute provides that "[t]he purpose of this section is to encourage the candor and cooperation of disputing parties, to the end that disputes may be quickly, fairly, and voluntarily settled." Wis. Stat. § 904.085(1); *see also Dyer v. Blackhawk Leather LLC*, 758 N.W.2d 167, 176 (Wis. Ct. App. 2008). The purpose of the mediation was to resolve Doe's claims against the Archdiocese relating to his abuse by Murphy, and Doe signed a complete release stating that the settlement resolved all disputes with the Archdiocese. A result that would undo that settlement and would allow Doe, years after the mediation settlement, the possibility of receiving more money from the

Archdiocese for the same abuse could discourage parties from quickly resolving their disputes through mediation.

Wisconsin's mediation privilege statute provides a party to a mediated agreement with contractual remedies based upon the written agreement. *See* Wis. Stat. § 905.083(4)(a) (providing that § 905.085(3) "does not apply to any written agreement, stipulation or settlement made between 2 or more parties during or pursuant to mediation"). The Wisconsin legislature could have chosen to incorporate more exceptions into its statute. The Uniform Mediation Act, drafted after Wisconsin adopted § 904.085 in 1993, for example, contains an express exception allowing a party to admit evidence of mediation communications for the purpose of "prov[ing] a claim to rescind or reform or a defense to avoid liability on a contract arising out of the mediation." *See* Uniform Mediation Act, The National Conference of Commissioners on Uniform State Laws, § 6(b)(2), available at http://www.uniformlaws.org/Act.aspx?title=Mediation Act (last visited Oct. 30, 2014). Although one might contend it is unjust that a person like Doe cannot recover if he was in fact fraudulently induced into signing a settlement agreement, our task is to apply the Wisconsin statute as it is written. *Cf. Rojas v. Superior Court*, 93 P.3d 260, 265 (Cal. 2004) (holding California mediation privilege was not subject to "good cause" exception because only exceptions to mediation confidentiality were those expressly provided in statute); *Princeton Ins. Co. v. Vergano*, 883 A.2d 44, 64 (Del. Ch. 2005) (declining to allow mediator testimony where plaintiff maintained mediation settlement induced by fraud, rejecting argument that the need to remedy a possible fraud outweighed public policy interest served by enforcing mediation agreements calling for confidentiality). The Wisconsin legislature bal-

anced competing interests to further the statute's goal of "quickly, fairly, and voluntarily" resolving disputes, Wis. Stat. § 904.085(1), when it crafted § 904.085, and we conclude the statute does not allow the admission of communications made during the mediation here because the disputes in mediation and in Doe's bankruptcy proof of claim are not distinct. As a result, summary judgment in the Archdiocese's favor was proper, as was the resulting order disallowing Doe's claim.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.